Filed 1/30/24  P.L. v. Superior Court CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| P.L.,<br><br>     Petitioner,<br><br>  v.<br><br>THE SUPERIOR COURT<br>OF SAN JOAQUIN COUNTY,<br><br>     Respondent;<br><br>SAN JOAQUIN COUNTY<br>HUMAN SERVICES AGENCY et al.,<br><br>     Real Parties in Interest. | C099195<br><br>(Super. Ct. No. STK-JV-DP-2018-0000097) |

P.L. (mother), the mother of F.L. (son) and P.H. (daughter), petitions for an extraordinary writ (Cal. Rules of Court, rule 8.452) to vacate the juvenile court's August 8, 2023 review hearing orders terminating her reunification services and setting a hearing pursuant to Welfare and Institutions Code section 366.26.[1]  Mother contends respondent juvenile court and the San Joaquin County Human Services Agency (Agency)

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

failed to adequately comply with the inquiry requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA).[2]

Because the circumstances of this case are unique and further ICWA inquiry is appropriate, we will issue a peremptory writ of mandate directing respondent juvenile court to do the following: to vacate its finding that the ICWA inquiry and notice provisions were satisfied and that ICWA does not apply, to order the Agency to conduct further inquiry of available relatives and provide any new information to the relevant tribes, as necessary, and to enter updated ICWA findings prior to proceeding with a section 366.26 hearing. We will vacate the stay previously issued by this court.

BACKGROUND

In January 2018, son and daughter were removed from mother's care after the Santa Clara County juvenile court sustained a dependency petition filed by the Santa Clara County Social Services Agency (SSA) pursuant to section 300. Mother indicated she had "Cherokee and Blackfoot" ancestry through the minors' maternal grandmother D.R. Daughter's paternal grandmother B.L. stated she and her son D.H. (daughter's father) did not have any Native American heritage. Daughter's father subsequently filed an ICWA-020 form indicating he did not have any Native American heritage. The Santa Clara juvenile court found ICWA may apply and instructed the SSA to provide notice to the relevant tribes.

---

[2] Son and daughter are half-siblings. To the extent mother claims the Agency should have made ICWA inquiry of S.R., the alleged father of son, the claim lacks merit. S.R. failed to establish a biological connection to son or daughter, and thus it was not established that son or daughter could derive ancestry from S.R. (See *In re E.G.* (2009) 170 Cal.App.4th 1530, 1533; 25 U.S.C. § 1903(9).) Until biological paternity is established for an alleged father, neither the juvenile court nor the social worker knows or has reason to know that an Indian child is involved, and notice requirements are not activated. (§ 224.2, subd. (a); *In re E.G.,* at p. 1533.)

The SSA sent ICWA notices to the Bureau of Indian Affairs (BIA), the Cherokee Nation, the Eastern Band of Cherokee Indians, the United Keetoowah Band of Cherokee Indians, and the Blackfeet Tribe of Montana. The January 2018 notices contained information about mother, daughter's father, the maternal grandparents, and daughter's paternal grandparents. Names and birthdates were provided for those individuals, as were full or partial addresses, with the exception of daughter's father, whose whereabouts at that time were stated as unknown. No other familial information was included in the notices.

In February 2018, the SSA reported that mother, daughter's paternal grandmother B.L., and maternal great-uncle K.R. attended a team decision making meeting to discuss placement. The report does not indicate any ICWA inquiry or attempts to gather further familial information were undertaken at that time. In the meantime, the Eastern Band of Cherokee Indians responded to the ICWA notice stating that son and daughter were not Indian children.

By March 29, 2018, the dependency matter had been transferred from Santa Clara County to San Joaquin County. The transfer-out order indicated the Santa Clara County juvenile court had not yet determined whether ICWA applied.

In June 2018, the Agency sent new ICWA notices to the BIA, the Blackfeet Tribe of the Blackfeet Reservation of Montana, the Cherokee Nation, the Eastern Band of Cherokee Indians, and the United Keetoowah Band of Cherokee Indians in Oklahoma. The June 2018 notices contained more detailed information about the individuals included in the January 2018 notices, as well as information about seven additional maternal relatives and three of daughter's additional paternal relatives. Regarding daughter's father, the June 2018 notices provided additional names, a former address (state prison in Chowchilla), and a birthplace for him. The Agency reported that its attempts to discover daughter's father's current whereabouts were unsuccessful other than to learn that he was incarcerated somewhere outside the State of California.

3

The Agency's June 2018 disposition report indicated maternal grandfather P.L. was incarcerated in state prison in Vacaville. Mother informed the Agency that she was raised by the maternal great-grandparents and she had seven siblings with whom she maintained contact.

In August 2018, the Agency filed a declaration stating that 60 days had passed since it sent the June 2018 notices and it had yet to receive responses from the Blackfeet Tribe, the Cherokee Nation, or the BIA. Attached to the declaration were responses from the Eastern Band of Cherokee Indians and the United Keetoowah Band of Cherokee Indians, each stating that son and daughter were not Indian children. The following month, the Agency filed a response from the Blackfeet Tribe stating that son and daughter were not Indian children. The Agency's subsequent status review report stated there was no reason to believe son and daughter were Indian children and requested that the juvenile court find that ICWA does not apply.

At the December 4, 2018 review hearing, the juvenile court found that ICWA does not apply. One month later, the Agency filed the Cherokee Nation's response stating that son and daughter were not Indian children.

Following the juvenile court's December 2018 ICWA finding, the Agency's reports provided no new information, stating only that there was no reason to believe son and daughter were Indian children and that the juvenile court had made a finding consistent therewith. The Agency's final review report filed August 1, 2023, showed no change in ICWA status.

At the August 8, 2023 review hearing, the juvenile court adopted the Agency's proposed findings and orders, terminated mother's reunification services, and set the matter for a section 366.26 hearing. No new ICWA findings were made at the hearing. This writ petition followed, and this court issued a stay of the section 366.26 hearing pending resolution of the writ petition.

4

Mother contends the Agency failed to inquire about the minor's potential Indian heritage with maternal grandfather P.L. and maternal aunt Br.L., and failed to contact daughter's father for the purpose of obtaining contact information for paternal grandfather Z.H.

Mother and the Agency agree that the Agency and the juvenile court have a duty to inquire if the minor is an Indian child. (§ 224.2, subds. (a) & (b).) The Agency discharges this duty by making inquiry to the minor's parents and others, including but not limited to extended family members. (*Id.,* subd. (b); *In re Dezi C.* (2022) 79 Cal.App.5th 769, 780, review granted Sept. 21, 2022, S275578.) The juvenile court and the Agency have an affirmative and continuing duty, beginning at initial contact and continuing throughout the pendency of the proceedings, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).)

Here, the December 2018 ICWA finding was made before several amendments to the statutory scheme, which became effective January 1, 2019. (Assem. Bill No. 3176 (2017-2018 Reg. Sess.); *In re M.W.* (2020) 49 Cal.App.5th 1034, 1043.) Mother does not assert that the December 2018 ICWA finding was erroneous under the prior law. However, because the juvenile court and the Agency have a continuing duty of inquiry under the statutory scheme, and because no further inquiry was made between the December 2018 ICWA finding and the August 2023 review hearing orders, we conclude the unique circumstances of this case warrant further ICWA compliance. As the Agency notes, if mother has any new or additional information regarding extended family members whose knowledge she believes would be helpful to the ICWA inquiry, that information should be provided to the juvenile court so that it can be addressed on remand. Implementing ICWA inquiry to ensure every effort is made to retain tribal ties

is only workable when, in good faith, all participants work together to determine whether children are Indian children. (*In re S.H.* (2022) 82 Cal.App.5th 166, 179.)

DISPOSITION

Let a peremptory writ of mandate issue directing respondent juvenile court to vacate the finding that the ICWA inquiry and notice provisions were satisfied and that the ICWA does not apply, and order the Agency to conduct further inquiry of available relatives and provide any new information to the relevant tribes, as necessary. The respondent juvenile court shall enter updated ICWA findings prior to proceeding with a section 366.26 hearing. Having served its purpose, the stay previously issued by this court on December 6, 2023, is vacated. This decision is final forthwith as to this court. (Cal. Rules of Court, rule 8.490(b)(2)(A).)


_____/S/_____
MAURO, Acting P. J.


We concur:


_____/S/_____
RENNER, J.


_____/S/_____
MESIWALA, J.